**Polsinelli Shughart PC**
Jason Nagi
805 Third Avenue
Suite 2020
New York, New York 10022

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WESTCON GROUP NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE CAPITAL CORP., <br><br> Defendant. | Civil Action No. _____ <br><br> **Jury Demanded** |

## Complaint

Plaintiff, Westcon Group North America, Inc. ("**Westcon**" or "**Plaintiff**"), by and through its undersigned counsel, for its cause of action against Defendant Prestige Capital Corp. ("**Prestige**" or "**Defendant**"), states as follows:

1. Plaintiff is a multinational corporation, incorporated in New York, and is a specialty distributor of advanced network technology with its principal place of business in Tarrytown, New York.

2. Defendant Prestige is a nationwide factoring firm that serves small and mid-size companies, incorporated in New Jersey, and located at 400 Kelby Street, 14th Floor, Fort Lee, New Jersey 07024.

3. Upon information and belief, Defendant Prestige was the factor of TransTec, LLC ("**Transtec**"), a New Jersey limited liability company engaged in the business of providing

technology and IT related services, network administration, web hosting, and security and information storage, with its principal place of business in Parsippany, New Jersey.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the Defendant resides in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendant is subject to personal jurisdiction in this District.

**Westcon Sold Products to Transtec**

6. On or about June 6, 2011, Transtec executed a Terms and Conditions of Sale Agreement (the "**Agreement**") evidencing the terms and conditions for Transtec's purchase of Westcon's products. A true and correct copy of the Agreement is attached as Exhibit 1 and incorporated by reference.

7. Pursuant to the Agreement, Transtec would order products from Westcon on credit by sending Westcon a purchase order. Transtec was then required to pay for the products within thirty (30) days of receiving an invoice from Westcon evidencing the order. In addition to the price of the products, Transtec was required to pay additional amounts, including taxes, insurance, and shipping charges.

**Transtec Entered Into Lockbox Agreements
and Assigned its Right to Payment to Westcon**

8. Westcon and Transtec also entered into separate lockbox agreements for certain purchases (the "**Lockbox Agreements**"). Pursuant to each Lockbox Agreement, Transtec purchased Westcon products on credit for a specific end user customer. Instead of the end user

paying Transtec, and then Transtec paying Westcon, Transtec instructed the end user to submit its full payment to a lockbox deposit account maintained at HSBC Bank exclusively for the benefit of Westcon (the "**Lockbox**").  Transtec provided Westcon with confirmation from each end user of its agreement to direct payment to the Lockbox.

9. After receipt of the end user's payment in the Lockbox, Westcon would draw down the costs of its products and remit any remaining amount to Transtec.  A true and correct copy of a Lockbox Agreement is attached as Exhibit 2 and incorporated by reference.

10. Each Lockbox Agreement included a "Schedule A" containing the end user's purchase orders for Westcon products.  Pursuant the Lockbox Agreements, Transtec assigned to Westcon its right, title, and interest to the end user's payment of the purchase orders in Schedule A.  As a result, Transtec had no right, authority, or ability to factor, re-assign, or otherwise transfer to Prestige the right to collect payment on the purchase orders. Westcon was the only party entitled to the purchase order payments.

11. In addition, each Lockbox Agreement provided Westcon with a security interest in all funds deposited into the Lockbox.

12. At all times, Westcon maintained control and authority over the Lockbox.

13. Each end user has received all Westcon products ordered in their purchase orders attached to the Lockbox Agreements.

14. Westcon has not received any end user payments, which should have been directed to the Lockbox.

15. On August 30, 2012, Transtec assigned certain portions of its estate to Steven Mitnick ("**Mitnick**") in an assignment for the benefit of creditors proceeding pursuant to Chapter 19 of Title 2A of the New Jersey Statutes (the "**ABC**").

16. On September 21, 2012, Mitnick, by motion to the Superior Court of New Jersey, Chancery Division, sold Transtec's estate assets to DCI Associates ("**DCI**") for $20,000. A true and correct copy of the Trasntec, LLC Assignment for the Benefit of Creditors docket is attached as Exhibit 3 and incorporated by reference. The order approving the motion states that the sale was purportedly "clear of Judgments, liens, claims encumbrances and all successor liabilities, except for the claim of Prestige Capital Corporation."

17. As a result of Prestige being excluded from the purported sale, Transtec's ABC does not affect any possible claim against Prestige.

18. In any event, Westcon did not receive any notice of the purported sale because the notice was sent to a PO Box maintained by HSBC Bank to receive lockbox payments from end users.

19. On November 21, 2012, Westcon filed suit against Transtec, Mitnick, and DCI for breach of contract. A true and correct copy of the complaint in case number 12-07239 is attached as Exhibit 4 and is incorporated by reference.

20. Upon information and belief, Westcon learned that Prestige contacted some, if not all, of the Lockbox Agreements' end users and directed them to remit payment of the purchase orders to Prestige and not to Westcon's Lockbox. Prestige's misdirection of the end users' payments is in violation of the Lockbox Agreements because Transtec previously assigned those payments to Westcon.

**Count I**
**(Conversion)**

21. Plaintiff re-alleges each allegation contained in paragraphs 1 through 20 as though fully stated below.

22. Pursuant to the Lockbox Agreements, Westcon owns all right, title, and interest to payment from the purchase orders attached in Schedule A to each Lockbox Agreement.

23. Prestige contacted some, if not all, end users with purchase orders in Schedule A of each Lockbox Agreement and directed them to pay Prestige.

24. Prestige obtained the end users' payments that Transtec assigned to Westcon in the Lockbox Agreements.

25. Prestige converted Westcon's property – the end users' payments – for its own use and benefit.

26. Prestige purposely sought out the end users subject to Lockbox Agreements and directed them to not pay Westcon. Thus, Prestige knew or should have known at the time it contacted each end user, and when it received their payments, that Westcon had an ownership interest in the end user's payments.

27. The total principal balance due under the Lockbox Agreements is $720,993.34.

28. Despite demand, Prestige has failed, and refuses, to turnover to Westcon the converted end user payments.

29. As a direct and proximate result of Prestige's conversion of the end users' payments, it has damaged Westcon in the principal sum of $720,993.34.

WHEREFORE, Westcon prays the honorable Court for a judgment against Prestige in the principal sum of $720,993.34 and for any other and further relief as the Court deems just and proper.

### Count II
### (Tortious Interference with a Business Expectation/Advantage)

30. Plaintiff re-alleges each allegation contained in paragraphs 1 through 29 as though fully stated below.

31. Westcon has a protectable interest in the end users' payments of the purchase orders attached to the Lockbox Agreements and has a reasonable expectation of an economic advantage and benefit from those purchase order payments.

32. Prestige had knowledge of Westcon's expectation of an economic advantage from receipt the end users' payments.

33. Prestige's conduct in directing the end users' payments from Westcon to itself constitutes tortious interference with Westcon's prospective economic advantage.

34. But for Prestige's wrongful interference, it is reasonably probable that Westcon would have realized its economic advantage or benefit, namely, receipt of the end user's payments.

35. Westcon has sustained damages as a result of Prestige's conduct.

WHEREFORE, Westcon respectfully requests that this Court enter a judgment against Prestige in the principal sum of $720,993.34 and for any other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  April 11, 2013<br>New York, New York | Respectfully submitted,<br><br>**POLSINELLI SHUGHART PC**<br><br>By: */s/ Jason Nagi*_____<br>    Jason Nagi<br>    805 Third Avenue, Suite 2020<br>    New York, New York 10022<br>    (212) 644-2092 (Telephone)<br>    (212) 684-0197 (Facsimile)<br>    jnagi@posinelli.com<br><br>    -and-<br><br>    Christopher A. Ward<br>    Jarrett K. Vine<br>    222 Delaware Avenue, Suite 1101<br>    Wilmington, Delaware 19801<br>    (302) 252-0920 (Telephone)<br>    (302) 252-0921 (Facsimile)<br>    cward@polsinelli.com<br>    jvine@polsinelli.com<br><br>    *Counsel for Plaintiff Westcon Group North America, Inc.* |